**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHUEISHA INC., KADOKAWA CORPORATION, KODANSHA LTD., AND SHOGAKUKAN INC., <br><br> Plaintiffs, <br><br> v. <br><br> DOES 1-100, who do business as hoshinoromi.org, worldjobproject.org, and zakayloader.org <br><br><br> Defendants. | **Civil Action No.** <br><br><br> **COMPLAINT FOR:** <br><br> **COPYRIGHT INFRINGEMENT** <br> **(17 U.S.C. § 101, *et seq.*)** <br><br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Shueisha Inc., KADOKAWA CORPORATION, Kodansha Ltd., and Shogakukan Inc., (the "Publishers"), for their Complaint against Defendants Does 1-100, who do business at www.hoshinoromi.org, worldjobproject.org, and zakayloader.org (together, "Hoshinoromi" or "Defendants"). The Publishers hereby allege, on personal knowledge as to matters relating to themselves and on information and belief as to all other matters, as set forth below.

**NATURE OF THE CASE**

1.      The Publishers are four of the largest and most well-known Japanese publishing companies. They produce traditional physical and digital products, sold by bookstores, comic shops, and online retailers throughout the world. Their publications include books and novels, reference and educational works, popular culture magazines, and manga. This case is about willful and massive infringement of the Publishers' manga.

2.       Manga are Japanese comics and graphics novels.  The medium includes a broad range of works, from sophisticated literary works for adults, sports-themed works for fans, and of course, comics geared towards the younger generation.  The manga industry employees thousands of talented artists and writers to create, promote, and distribute these works.

3.       Although Japanese in origin, manga is consumed worldwide.  It has broken cultural barriers and developed a substantial readership in countries outside of Japan, including the United States.  American fans regularly purchase Japanese manga through specialty bookstores or online importers.  The Publishers also regularly release or license foreign language translations.

4.       Hoshinoromi is a pirate website operating at www.hoshinoromi.org, which organizes, promotes, and distributes unauthorized copies of the Publishers' manga on a massive scale.  As of July 29, 2019, the front page of Hoshinoromi proudly boasted of a catalogue of over 93,000 volumes or books that it copied and is distributing for free.  Each of those volumes often encompasses over 200 pages, and rough estimates indicate the site has illegally reproduced nearly 20,000,000 pages of copyrighted text and images.

5.       Exhibit A identifies 41 copyrighted manga titles owned by Plaintiffs, with 1,307[1] serialized volumes illegally reproduced and distributed by Hoshinoromi (the "Infringed Works").  Exhibit A is but a small sample of the infringing works that have been reproduced and distributed on Hoshinoromi.

6.       Hoshinoromi is a successor site to Mangamura (translated to "Manga Village"), which was located at manga-mura.net.  Manga Village, like Hoshinoromi, had an extensive collection of illegal manga that it reproduced and distributed to the public for free.  In recognition

---

[1]A small number of volumes appear to be duplicates.  These are generally different versions, from different sources, and with different image quality.

of the massive harm caused by Manga Village, the Japanese Government created a special task force to investigate and combat the site and it came down in April 2018.  More recently, in July 2019, the suspected operator Romi Hoshino (also known as Zakay Romi) was arrested in the Philippines.  Before it was shut down, Manga Village had a collection of around 60,000 pirated manga volumes and approximately 100 million visitors each month.

7.      Hoshinoromi bills itself as the successor to Manga Village, with the site title Hoshinoromi – Manga Village Clone.[2]  (Ex. B).  Hoshinoromi's now-disabled Twitter account, @hoshinoromikuma, also posted numerous statements connecting the two sites.  (Ex. C). Although the site is named after Romi Hoshino, it continues to operate and add new content despite his arrest.

8.      While Hoshinoromi appears in Japanese and distributes Japanese manga, the operators are using sites and services in the United States to engage in their massive and brazen piracy.   Among other connections, the domain registrar and content distribution network used by Hoshinoromi are both U.S. companies.

9.      Despite offering infringing content for free, Hoshinoromi nonetheless profits from piracy through advertisements.  According to similarweb.com, the site has had approximately 31.15 million visits since launching in May 2019.  (Ex. D).  Hoshinoromi regularly displays advertisements to these visitors, often for adult content or scams (e.g., "Congratulations! Google User!  You've been selected as a winner for the free $1000 Walmart Giftcard…").  (Ex. E).

10.      The operators of Hoshinoromi are acutely aware of the financial impact their piracy has.  As they stated on Twitter: "when the old Manga Village closed, sales of manga went up, so

---

[2] Original Japanese:  星のロミー漫画村クローン

3

the new Manga Village was revived, and profits will lower again!!!!  What countermeasures are you going to take this time??"[3]  (Ex. C at 3).

11.     To avoid enforcement against their site and protect their advertising revenue, Hoshinoromi has gone to great lengths to block competitor pirates and investigators from copying images in bulk.  The operators of the site have no problem stealing and profiting from the Publishers' manga, but they implement countermeasures to ensure that others do not do the same to them.

12.     By intentionally reproducing and distributing the Publishers' manga for free on a massive scale, Hoshinoromi undercuts the sales and perceived value of Infringing Works, as well as the ability to license or otherwise profit from the Infringing Works.  Accordingly, the Publishers seek damages and injunctive relief to stop and redress the infringement.

**PARTIES**

13.     Plaintiff Shueisha Inc. ("Shueisha") is a Japanese joint-stock company headquartered in Tokyo, Japan.

14.     Plaintiff KADOKAWA CORPORATION ("KADOKAWA") is a Japanese joint-stock company headquartered in Tokyo, Japan.

15.     Plaintiff Kodansha Ltd. ("Kodansha") is a Japanese joint-stock company headquartered in Tokyo, Japan.

16.     Plaintiff Shogakukan Inc. ("Shogakukan") is a Japanese joint-stock company headquartered in Tokyo, Japan.

---

[3] Original Japanese: 旧漫画村が閉鎖した時に、漫画の売上が上がったから今回の新漫画村が復活してまた利益下がるクマクマクマクマ〜！！！！今度はどんな対策をしてくるクマクマ〜？？

17.     Defendants Does 1-100 are the owners and operator(s) of hoshinoromi.org, and its backend server, zakayloader.org (previously, worldjobproject.org).   Their real name(s) and location(s) are unknown.

## JURISDICTION AND VENUE

18.     This is a civil action arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*  The Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a).

19.     The Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302.  Upon information and belief, Defendants transact business in New York, and committed tortious acts of copyright infringement within, and causing injury to the Publishers, in New York. In particular, Defendants (a) transact business in New York by selling and displaying advertisements to New York residents; (b) have committed acts of copyright infringement in New York and in this district; and (c) have committed acts of copyright infringement outside New York causing injury to the Publishers, in New York.  Defendants expected or should have reasonably expected their actions would have consequences in New York, and they derive substantial revenue from interstate and international commerce.

20.     In the alternative, this Court can exercise jurisdiction pursuant to Fed. R. Civ. P. 4(k).  If the Court lacks jurisdiction under N.Y. C.P.L.R. § 302, then the Defendants will not be subject to jurisdiction in any U.S. state court of general jurisdiction.  However, exercising jurisdiction under Rule 4(k) would be consistent with the United States Constitution because Hoshinoromi is distributing infringing material in the United States on massive scale, and relies on a content delivery network, domain registrar, and social media services in the United States.

21.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district.  Upon information and belief, Hoshinoromi regularly distributes copyrighted content and displays advertisements to users in this

district, including to the Publishers who downloaded hundreds of thousands of pages of their

copyrighted works on computers located in New York City.  In the alternative, venue would be

proper pursuant to 28 U.S.C. § 1391(b)(3).   If the Court concludes that a substantial part of the

events giving rise to the claim did not occur in this district, then no judicial district would likely

be an appropriate venue under §§ 1391(b)(1) and (2).  However, venue would still be proper under

§ 1391(b)(3), because the Court has personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### A.      The Publishers' Businesses

22.      The Publishers are among the largest and most well-recognized publishing

companies in Japan.  Their products include manga, magazines, light novels, educational books,

and reference books.  They are widely available in physical and electronic formats from bookstores

and online marketplaces around the world.   For example, many of their manga series are

legitimately sold at specialty books stores, such as Kinokuniya in New York City.[4]

23.      The Publishers invest significant time and money into their products and suffer

serious financial harm when infringing copies are illegally reproduced and distributed.   The

Publishers, authors, and artists are deprived of income when their works are unlawfully copied and

published to the public.  This has serious financial and creative repercussions.  A substantial

decline in revenue from sales or licensing of the Publishers' copyrighted works undermines the

incentive to create and could ultimately cause them to cease publishing deserving works.

### B.      The Publishers' Respective Copyrights

24.      The Publishers own the copyrights or have an exclusive license to distribute each

of the Infringed Works.  (Ex. A).  The list includes many manga series that are well-known and

---

[4] Located at 1073 Avenue of the Americas, New York, NY 10018.

popular in the United States such as "One Piece," "GIGANT," "A Bride's Story," and "Attack on Titan." (*Id.*)

25.     None of the Infringed Works is a "United States work" as defined by 17 U.S.C § 101.  Accordingly, registration with the U.S. Copyright Office is not a prerequisite to suit.  *See* 17 U.S.C. § 411.   However, one of the series listed in Exhibit A, Death Note, has registrations with the U.S. Copyright Office for volumes 1-12.[5]

### C.      Hoshinoromi's Unlawful Activities

26.     Hoshinoromi is a *massive* repository of illegal content.  As of July 29th, 2019, the site claimed to have over 93,000 manga or novel volumes that it was publishing to consumers. (Ex. B.)[6]  Users can browse lists of works by category, or search for specific titles.   After choosing one, they are directed to a series page listing all of the available volumes for that title.   Many series have dozens of volumes. (*See, e.g.,* Ex. F).  Hoshinoromi may be offering nearly 20,000,000 pages of copyrighted content.

27.     When users click on specific volumes, the site launches a custom Java-based viewer that reproduces and displays high-resolution copies of the copyrighted content and allows readers to browse through them by clicking on the sides of the images.  This viewer retrieves images from a backend server using an encrypted connection, which intentionally obscures the hosting source. However, the Publishers have identified the site's backend server, zakayloader.org,[7] which uses a U.S. domain registrar, domain name servers, and content delivery network.

---

[5] Registration Nos.:  VA0001931368, VA0001931369, VA0001931371, VA0001931440, VA0001931442, VA0001931443, VA0001931444, VA0001931445, VA0001931446, VA0001931447, VA0001931449, VA0001931450

[6] Hoshinoromi has since removed the volume count from its front page, but the about section of the site continues to boast a catalog of 88,000 volumes.

[7] When the Publishers collected evidence of infringement in late July 2019, the viewer retrieved images from worldjobproject.org.  However, in August 2019, the backend was migrated to the zakayloader.org domain.  However, the content, labeling, and organization of the data appears to be identical.

28.     Although the operators of Hoshinoromi designed the site to be accessible and user friendly for readers, they also made it resistant to automated content scraping tools.  For example:

- Entry to the site is often restricted by a CAPTCHA, which requires human review before permitting access.  (Ex. G).

- The site does not use a standard HTML viewer for displaying images.  Instead, it uses a Java-based viewer that uses encryption to obscure the source of the images and prevents content scraping tools from identifying links and directly capturing images in bulk.  (Ex. H).

- The viewer employs rate-limiting, which caps the speed at which images can be viewed.  Exceeding that limit triggers an error message.  (Ex. I).

- The viewer lacks traditional buttons and does not respond to common keystrokes, requiring mouse clicks to navigate.  This, along with the CAPTCHA, prevents the use of "headless" internet browsers to capture content.

- The backend server or servers routinely blacklist IP addresses that are detected collecting content in bulk.

29.     Hoshinoromi has no problem offering stolen content, but it has been specifically designed to preclude other competing pirates from appropriating the vast library of illegal content. Hoshinoromi is designed in this manner to protect the substantial profits it makes from copyright infringement through advertising.  The site frequently displays a range of ads for adult content, scams, and other products.  (*See, e.g.*, Ex. E).

**D.     Hoshinoromi's U.S. Connections**

30.      Hoshinoromi regularly delivers copyrighted content to readers in the United States, including in New York.  For example, using computers located in New York City, the Publishers collected extensive evidence of infringement for the 41 unique titles listed on Exhibit A.  This included 1,297 infringing volumes, approximately 270,000 pages of content,[8] and 187 GB of data.[9]

---

[8] The Publishers captured 136,087 screenshots, each typically containing both a left and right page.  A small fraction may contain error pages or advertisements, but the vast majority have correctly captured the infringing content.

[9] With the Court's permission, the Publishers will submit a hard drive containing the complete collection of evidence.

31.     Hoshinoromi also makes extensive use of services from a U.S.-based internet service provider, Cloudflare.  Cloudflare is incorporated in Delaware, headquartered in California, and has data centers and offices around the country, including an office New York City. Cloudflare provides Hoshinoromi with:

- A content delivery network, which is "an expansive global network of data centers that cache static content closer to users, and deliver dynamic content over the fastest and most reliable private backbone links."  (Ex. J at 2).

- A firewall, which can "block or challenge visitors [with a CAPTCHA]" by IP address or country code.  (Ex. K at 11).

- A reverse proxy-service, which "sits in front of an origin server and ensures that no client ever communicates directly with that origin server," effectively masking the origin server's location and operators.  (Ex. L at 4).

32.     Hoshinoromi employs each of these services.  Cloudflare caches infringing content from both Hoshinoromi.org and the backend server, zakayloader.org (previously, worldjobproject.org).  (*See* Ex. M).  Cloudflare provides a reverse proxy to mask the server locations and operators.   And the Cloudflare firewall regularly challenges visitors with a CAPTCHA.  (Ex. G).

33.     Although Hoshinoromi could easily have used the Cloudflare firewall to limit the geographic reach of its website (known as "geoblocking"), it did not do so.  Hoshinoromi intentionally chose to distribute copyrighted content to the United States and New York in order to bolster its viewership, and ultimately, its advertising revenues.[10]

34.     Hoshinoromi also makes use of several other U.S.-based companies and services. The operators use social media sites like Twitter and Gab to advertise the site.  (*See* Exs. C, N).

---

[10] Wikipedia, Geo-blocking, *available at* https://en.wikipedia.org/wiki/Geo-blocking ("Geoblocking can be used for other purposes as well, such as blocking access from countries that a particular website is not relevant to, *voluntarily blocking access to content or services that are illegal under local laws*, or to control malicious traffic.") (emphasis added) (last accessed Sept. 3, 2019).

Both hoshinoromi.org and zakayloader.org are registered using the domain registrar Tucows, a Pennsylvania company with offices in Mississippi and Washington State. (Exs. O, P). While worldjobproject.org was used as Hoshinoromi's backend server, it was also registered with Tucows. (Ex. Q).

### E.  Hoshinoromi is Intentionally Breaking the Law

35.     Hoshinoromi's conduct is intentional and deceitful.  In addition to the sheer scale of the operation, the operators regularly brag on social media about their activities.  The now-disabled Twitter account, @hoshinoromikuma, posted statements like:

- Even if you tell people to not look at Mangamura, it's impossible to stop because they already know about it!

  漫画村見てる人に「漫画村見るな」って言ってもサイトを知ってしまった以上止められないクマクマクマクマ～！

  (Ex. C at 5).

- Get prepared before the site is blocked! [followed by an image describing how to circumvent DNS blocking].

  ブロックされる前に対策しておくクマクマクマクマクマクマ～！

  (Ex. C at 4).

- When the old Mangamura closed, sales of manga went up, so the new Mangamura was revived, and profits will lower again!!!!  What countermeasures are you going to take this time??

  旧漫画村が閉鎖した時に、漫画の売上が上がったから今回の新漫画村が復活してまた利益下がるクマクマクマクマ～！！！！今度はどんな対策をしてくるクマクマ～？？

  (Ex. C at 3).

36.     Hoshinoromi intentionally seeks to hide its conduct.  As previously explained, the site uses Cloudflare's reverse-proxy service to mask server locations and operator identities. Additionally, by using a Java-based image viewer with an encrypted connection to backend

servers, Hoshinoromi seeks to mask the location of the infringing content.  The Publishers also anticipate that the operators may have registered for services like Cloudflare and Tucows using fictitious or fraudulent information.

37.     Hoshinoromi's intentional and deceitful misconduct has resulted in lost profits to the Publishers and damaged the inherent value of their copyrighted works, which negatively affects the Publishers' relationships with licensees, distributors, authors, artists, and others.

**FIRST CLAIM FOR RELIEF**

**Copyright Infringement Under 17 U.S.C. §§ 101, *et seq.***

38.     The Publishers re-allege and incorporate by reference the allegations set forth above in paragraphs 1-37.

39.     The Infringed Works are original works and copyrightable subject matter under the Copyright Act.

40.     At all relevant times, the Publishers have been and are the owners, or exclusive licensees, of all rights, title, and interest in the copyrights of the Infringed Works.  They have never been assigned, licensed, or otherwise transferred to Hoshinoromi.

41.     Beginning on an unknown date, but at least since May 2019 and continuing to the present, Hoshinoromi, intentionally infringed the Publishers' copyrights in the Infringed Works.  Specifically, Hoshinoromi infringed their exclusive rights to reproduce and distribute the copyrighted works, in violation of 17 U.S.C. § 106.

42.     Hoshinoromi's unlawful conduct was willful.  Hoshinoromi's operators know that their conduct is unlawful and in violation of the Publishers' copyrights.  They acted intentionally and/or in reckless disregard of the Publishers' rights.

43.     As a result of Hoshinoromi's unlawful and deliberate conduct as set forth above, the Publishers have been, and will continue to be, damaged.

44.     Hoshinoromi's actions described above have caused and will continue to cause irreparable damage to the Publishers, and they have no adequate remedy at law.  Unless this Court restrains Hoshinoromi and its operators from continuing their infringement of the Publishers' copyrights, these injuries will continue to occur in the future.  Accordingly, the Publishers are entitled to injunctive relief restraining Hoshinoromi and its operators from further infringement.

## PRAYER FOR RELIEF

i.     Judgment on the claims set forth above, including that Defendants' infringement of the Publishers' Works was intentional and willful.

ii.     Damages and/or restitution, including exemplary and/or punitive damages;

iii.     An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct;

iv.     An order requiring Defendants to pay the Publishers such damages as they have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at the Publishers' election, pursuant to 17 U.S.C. § 504;

v.     An order enjoining Defendants and those in active concert or participation with them from further infringing upon the Publishers' respective copyrights pursuant to 17 U.S.C. § 502;

vi.     An order requiring Defendants and anyone acting in active concert or participation with Defendants to deliver up for destruction all infringing copies of the Publishers' respective copyrights to 17 U.S.C. § 503;

vii.      Prejudgment and post-judgment interest at the applicable rate;

viii.      Plaintiffs' attorney's fees, expenses, and costs of suit; and

ix.      Such other and further relief the Court deems proper.

## JURY TRIAL DEMAND

The Publishers hereby request a trial by jury.


DATED:  September 4, 2019                    Respectfully submitted,


By:  /s/ Matthew J. Oppenheim
—————————————————
Matthew J. Oppenheim
Michael Druckman (Mot. for Adm. forthcoming)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
Tel:  (202) 480-2999
Fax:  (866) 766-1678
matt@oandzlaw.com
druckman@oandzlaw.com

*Attorneys for Plaintiffs*